

1  Heather Appleton, Esq. (SBN 162283)
   happleton@appletonlg.com
2  APPLETON LAW GROUP, APC
   2101 Rosecrans Avenue, Suite 4240
3  El Segundo, California 90245
   Telephone: (310) 474-7022
4  Facsimile: (310) 474-7023

5  Scott McVarish, Esq. (SBN 198095)
   scott@strongadvocates.com
6  Law Office of Scott McVarish
   6601 Center Drive West, Suite 500
7  Los Angeles, California 90045
   Telephone: (800) 792-9889
8  Facsimile: (800) 628-5605

9  Attorneys for Relator
   Alfred Edwin Pevler
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13  [UNDER SEAL],                    ) CASE **CV16-01144**PA(AS)
                                     )
14          Plaintiffs,              ) CASE FILED:
                                     )
15          vs.                      ) ASSIGNED FOR ALL PURPOSES TO
                                     ) HON. XXX
16  [UNDER SEAL]                     )
                                     ) **FILED *IN CAMERA* AND UNDER**
17          Defendants.             ) **SEAL PURSUANT TO 31 U.S.C**
                                     ) **§3730(b)(2)**
18                                   )
                                     ) COMPLAINT FOR VIOLATIONS OF
19                                   ) THE FEDERAL FALSE CLAIMS ACT
                                     )
20                                   ) JURY TRIAL DEMANDED
                                     )
21                                   ) DISCOVERY CUT-OFF:    NONE SET
                                     ) MSJ HEARING CUT-OFF: NONE SET
22  _____) TRIAL DATE:          NONE SET

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                    1
    COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
    {Client Files/PEVL01/001/00061551.DOC}

1   Heather Appleton, Esq. (SBN 162283)
    happleton@appletonlg.com
2   APPLETON LAW GROUP, APC
    2101 Rosecrans Avenue, Suite 4240
3   El Segundo, California 90245
    Telephone: (310) 474-7022
4   Facsimile: (310) 474-7023

5   Scott McVarish, Esq. (SBN 198095)
    scott@strongadvocates.com
6   Law Office of Scott McVarish
    6601 Center Drive West, Suite 500
7   Los Angeles, California 90045
    Telephone: (800) 792-9889
8   Facsimile: (800) 628-5605

9   Attorneys for Relator
    Alfred Edwin Pevler

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13  UNITED STATES *ex rel* ALFRED      )   CASE NO.:
    EDWIN PEVLER,                      )
14                                     )   CASE FILED:
             Plaintiffs,               )
15                                     )   ASSIGNED FOR ALL PURPOSES TO
         vs.                           )   HON. XXX
16                                     )
    RAYTHEON COMPANY, a Delaware )       **FILED *IN CAMERA* AND UNDER**
17  corporation; and DOES 1-10, inclusive, )  **SEAL PURSUANT TO 31 U.S.C**
                                       )   **§3730(b)(2)**
18           Defendants.               )
                                       )   **RELATOR ALFRED EDWIN**
19                                     )   **PEVLER'S COMPLAINT FOR**
                                       )   **DAMAGES AND INJUNCTIVE**
20                                     )   **RELIEF**
                                       )
21                                     )   JURY TRIAL DEMANDED
                                       )
22                                     )   DISCOVERY CUT-OFF:   NONE SET
                                       )   MSJ HEARING CUT-OFF: NONE SET
23  _____)   TRIAL DATE:         NONE SET

24          The United States of America, by and through qui tam relator Alfred Edwin

25  Pevler ("Relator"), brings this action under 31 U.S.C. sections 3729, *et seq.*, as

26  amended ("False Claims Act") to recover all damages, penalties and other

27  remedies established by the False Claims Act.

28  ///

                                      2

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

# PRELIMINARY STATEMENT

1.     This is an action to recover damages and civil penalties on behalf of the United States of America, for violations of the False Claims Act arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used or presented, or any combination thereof, by the defendants, their agents, employees, or co-conspirators, or any combination thereof, with respect to false claims for payment on Defendants' contract with the United States Army for a Ground Control Station ("GCS") to support Raytheon's Hawkeye (Ground Penetrating Synthetic Aperture Radar (GPSAR) Vertical Take Off and Landing (VTOL) Unmanned Aerial Vehicle (UAV) Counter-IED System Development program ("the Hawkeye program").

2.     The False Claims Act was enacted during the Civil War.  Congress amended the False Claims Act in 1986 to enhance the government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization.  Congress intended that the amendments create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisal or government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the government's behalf.

3.     The False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the United States government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the government.

4.     The False Claims Act allows any person having information about a false or fraudulent claim against the government to bring an action for himself and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1  the government, and to share in any recovery. The False Claims Act requires that

2  the complaint be filed under seal for a minimum of 60 days (without service on the

3  defendant during that time) to allow the government time to conduct its own

4  investigation and to determine whether to join the suit.

5      5.   This is an action for treble damages and penalties for each false claim

6  and each false statement under the False Claims Act, 31 U.S.C. §§3729, *et seq.*, as

7  amended.

8      6.   This action alleges, inter alia, that, from at least 2010 to the present,

9  Raytheon Company ("Raytheon" or "Defendant") has violated the False Claims

10  Act by knowingly submitting false or fraudulent claims to the United States

11  government for payment of in excess of $23 million in connection with its contract

12  #H94003-04-D-0006 with the United States government for the Hawkeye program.

13  Relator further alleges Raytheon used false statements to the United States in order

14  to compel it to enter into the contract for the Hawkeye program, conspired with

15  others in connection with said contract, and unlawfully retained the fraudulently-

16  secured payment from the United States in connection with said contract. Relator

17  further alleges Raytheon retaliated against him by demoting him, removing him

18  from the Hawkeye program, and ultimately terminating his employment on

19  pretextual grounds, for his role in complaining about and exposing the fraud.

20                          **JURISDICTION AND VENUE**

21      7.   This Court has jurisdiction over the subject matter of this action

22  pursuant to 28 U.S.C. section 1331 and 31 U.S.C. section 3732, the latter of which

23  specifically confers jurisdiction on this Court for actions brought pursuant to 31

24  U.S.C. sections 3729 and 3730.

25      8.   This Court has personal jurisdiction over Defendants pursuant to 31

26  U.S.C. section 3732(a) because Defendants can be found, and transact business, in

27  this District and the actions complained of which are proscribed by 31 U.S.C.

28  section 3729 occurred in this District.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

9.     Venue is proper in this District under 31 U.S.C. section 3730(b)(1) because all of the defendants have at least minimum contacts with the United States, and all Defendants can be found in, reside, and/or transact or have transacted business in this District.  Additionally, the actions complained of which are proscribed by 31 U.S.C. section 3729 occurred in this District.

10.     There has been no "public disclosure" of the allegations or transactions in this Complaint that bar jurisdiction under 31 U.S.C. section 3730(e).  To the extent there has been any such disclosure, Relator constitutes an "original source" pursuant to 31 U.S.C. section 3730(e)(4).

## PARTIES

11.     Qui Tam Relator Alfred Edwin Pevler is an individual who was employed by Raytheon from June 7, 2010 until February 19, 2014 when his employment was unlawfully terminated for pretextual reasons.  Before this suit was filed, Relator voluntarily and on his own initiative contacted federal law enforcement, turned over evidence of Defendants' wrongdoing, worked closely with federal agents and had meetings to assist federal law enforcement officers in gathering, reviewing, and understanding the evidence.  After Raytheon became aware of Relator's complaint of wrongdoing, Raytheon reassigned Relator away from the Hawkeye program.  After Raytheon became aware of Relator's meeting with federal law enforcement, Raytheon wrongfully terminated Relator's employment for pretextual reasons.

12.     Defendant Raytheon Company is a government contractor that provides state-of-the-art electronics, mission systems integration and other capabilities in the areas of sensing; effects; and command, control, communications and intelligence systems; as well as a broad range of mission support services as an aerospace and defense contractor to the United States government.  Raytheon is headquartered in this judicial district, although it is incorporated in Delaware.  Raytheon contracts with many agencies of the United

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1 States government.

2     13.    The true names, capacities and identities of defendants DOES 1

3 through 50 are presently unknown to Relator.  Both the named defendant and such

4 additional DOE defendants served as contractors, agents, partners, and/or

5 representatives of one another in the fraud, concealment, and submission of false

6 and fraudulent claims to the United States, and were acting within the course,

7 scope and authority of such contract, agency, partnership and/or representation for

8 the conduct described herein.  When their true names and capacities are

9 ascertained, Relator will file an Amendment to this Complaint.  Relator is

10 informed and believes and thereon alleges that each of the fictitiously named

11 defendants is responsible in some manner for the occurrences herein alleged, and

12 those defendants proximately caused, are responsible for, and/or are legally liable

13 for Relator's damages as herein alleged.  Each reference in this Complaint to

14 "Defendant," "Defendants," or a specifically named defendant refers to and

15 includes all Defendants sued under fictitious names.

16     14.    Whenever in this Complaint reference is made to any act of

17 Defendants, such allegations shall be deemed to mean all named defendants and

18 DOES 1 through 50, or their officers, owners, members, shareholders, agents,

19 managers, representatives, employees, heirs, assignees, customers and tenants, did

20 or authorized such acts while actively engaged in the operation, management,

21 direction or control of the affairs of Defendants and while acting within the course

22 and scope of their duties.

23     15.    At all relevant times, Raytheon was an "employer" covered by

24 California Labor Code section 1102.5(b) which prohibits employers from

25 retaliating against employees for disclosing information, or because the employer

26 believes that the employee disclosed or may disclose information, to a government

27 or law enforcement agency, when the employee has reasonable cause to believe

28 that the information discloses a violation of state or federal statute, or a violation of

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   or noncompliance with a local, state, or federal rule or regulation.

2       16.    At all relevant times, Raytheon was an "employer" covered by

3   California Labor Code section 1102.5(c) which prohibits employers from

4   retaliating against employees for refusing to participate in an activity that would

5   result in a violation of state or federal statute, or a violation of or noncompliance

6   with a local, state, or federal rule or regulation.

7                                         **APPLICABLE LAW**

8       17.    The False Claims Act provides that any person who (1) knowingly

9   presents, or causes to be presented, a false or fraudulent claim to the United States

10  for payment or approval; (2) knowingly makes, uses, or causes to be made or used,

11  a false record or statement material to a false claim; (3) conspires to commit either

12  of the foregoing; or (4) knowingly conceals or knowingly and improperly avoids

13  an obligation to pay or transmit funds to the government is liable to the United

14  States for damages and penalties. (31 U.S.C. §§3729(a)(1)(A), (a)(1)(B),

15  (a)(1)(C), and (a)(1)(G).

16      18.    The False Claims Act also prohibits retaliation against an employee

17  for making efforts to prevent the submission of false and fraudulent claims to the

18  government. (31 U.S.C. §3730(h)).

19      19.    The False Claims Act allows any person having knowledge of a false

20  or fraudulent claim against the United States to bring an action for himself and the

21  United States, and to share in any recovery.

22      20.    False Claims Act liability attaches to any person who knowingly

23  presents or causes a false or fraudulent claim to be presented for payment, or to a

24  false record or statement made to get a false or fraudulent claim paid by the

25  government. (31 U.S.C. §§3729(a)(1),(2)).

26      21.    Under the False Claims Act, the terms "knowing" and "knowingly"

27  mean that a person: (a) has actual knowledge of the information; (b) acts in

28  deliberate ignorance of the truth or falsity of the information; or (c) acts in reckless

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1  disregard of the truth or falsity of the information, and no proof of specific intent to

2  defraud is required.  (31 U.S.C. §3729(b)).

3      22.    The False Claims Act is violated not only by a person who makes a

4  false statement or a false record to get the government to pay a claim, but also by

5  anyone who engages in a course of conduct that causes the government to pay a

6  false or fraudulent claim for money.

7  ## FACTUAL ALLEGATIONS

8      23.    Relator Alfred Edwin Pevler was employed by Raytheon as a Senior

9  Principal Engineer from June 7, 2010 until February 19, 2014 when his

10  employment was unlawfully terminated for pretextual reasons.

11      24.    In January 2010, Relator was living in San Antonio, Texas and was

12  recruited by Defendant Raytheon to move to California and accept a position of

13  Product Team Lead.

14      25.    Although Relator was unemployed at the time Raytheon first

15  contacted him, by the time he and Raytheon negotiated the terms of employment,

16  Relator had accepted a position with another defense contractor (for whom he had

17  not yet begun working).

18      26.    Raytheon's offer was less attractive financially and required a move

19  from Texas to California, but based on Raytheon's representations during the

20  interview process, Relator was convinced the Raytheon position held more to offer

21  in terms of job assignment and long-term success.  Raytheon had also offered to

22  reinstate all of Relator's security clearances, including Sensitive Compartmented

23  Information access.

24      27.    On or about February 17, 2011, Relator received his Performance &

25  Development Summary (performance evaluation) for the 6 months he worked in

26  the 2010 work year.  Relator's 2010 performance was rated as "Meets

27  Requirements."

28      28.    In or about March 2011, Relator was assigned as the Integrated

1  Product Team Lead ("IPTL") for Ground Control Station ("GCS") to support

2  Raytheon's Hawkeye program for the United States Army, consistent with the type

3  of position for which he was recruited and hired.  As the GCS IPTL, Relator was

4  responsible for development of the GCS and Raytheon's compliance with the

5  terms of its contract with the United States.

6       29.     Raytheon's contract #H94003-04-D-0006 with the United States was

7  premised on a need for enhanced survivability of soldiers and vehicle platforms

8  against Improvised Explosive Devices ("IEDs"), which at the time of the Hawkeye

9  program contract was prepared, were the leading contributors to casualties in

10  current combat zones.

11       30.     The Hawkeye program contract provides as "Background":

12  "There are a myriad of IED threats currently in use and a number of
   technologies aimed at mitigating them.  However, there is no single
13  solution that is completely effective against IEDs and soldier
   protection involves a compilation of technologies to offer substantial
14  protection.  The Joint IED Defeat Organization (JIEDDO) is
   responsible for leading, advocating, and funding all DOD efforts to
15  defeat IEDs.  JIEDDO currently has capability gaps that reduce the
   U.S. forces [sic] effectiveness at defeating IEDs.  Among these gaps
16  are IED prevention and detection; IED neutralization; and force
   training.  JIEDDO's mission is further complicated by the lack of a
17  rapid acquisition approach and the need to quickly field technology-
   intensive solutions to reduce casualties occurring at high frequency in
18  theatre."

19       31.     For Raytheon's work on the Hawkeye program, the United States

20  agreed to pay in excess of $23 million.  Relator is informed and believes and based

21  thereon alleges the United States did pay Raytheon for the Hawkeye program

22  contract.

23       32.     Immediately after Raytheon's contract with the Army for the

24  Hawkeye program was formalized, Relator read it.  The contract contains only 2

25  Contractual Engineering Tasks, one of which specifies the attributes of the GCS.

26  Contractual Engineering Task ("CET") 3.3.2.2 of the contract states:

27  "The GCS design shall utilize a transportable shelter certified for
   military air transport, and suitable for operation in a forward operating
28  area.  The GCS shall contain the IFP and associated resources,
   workstations for the UAV pilots, mission commander, and

9

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   information analysts. Nonsecure Internet Protocol Router (NIPR)
2   Network capabilities shall also be provided in the GSC." (Emphasis added).

3   33.     When Relator read CET 3.3.2.2., he immediately realized Raytheon
4   could not meet the contract requirements for the GCS. Specifically, the GCS
5   would not be able to be "certified for military air transport". Raytheon's January
6   22, 2010 proposal for the contract contemplated the GCS was expected to be a 40
7   foot long container, similar to those used on cargo ships. The container was to be
8   converted by the manufacturer to be a self-contained laboratory with electrical
9   generation, HVAC, computers, and work stations, etc.

10  34.     The Department of Defense agency responsible for the approval of
11  airlift cargo on fixed wing cargo aircraft is the Air Transportability Test Loading
12  Agency ("ATTLA"). The ATTLA has published criteria for meeting certification
13  requirements without ATTLA specific analysis or test loading. "An item should be
14  evaluated as an air transportability problem item if it exceeds any of the parameters
15  listed" on its website, including when the length of the item is greater than 20 feet.

16  35.     Because the GCS design in Raytheon's contract with the United States
17  contemplated a container 40 feet in length, it exceeded the parameter criteria
18  published by the ATTLA, meaning in order to meet the contractual requirement
19  that the GCS be "certified for military air transport," Raytheon was required to
20  submit the system design to the ATTLA for evaluation.

21  36.     The Hawkeye development schedule and budget had no allowances
22  for ATTLA evaluation and was very aggressive in both of those parameters. As
23  the GCS IPTL, Relator was unaware of any contact whatsoever with the ATTLA
24  to discuss certification and no such communication was discovered when the
25  subject of ATTLA requirements was raised with project management.

26  37.     Instead, Chief Engineer Maurice Roe wrote in an email that such
27  certification was not required for the contracted phase of the project, and would be
28  included in a future phase contract. Insofar as the requirement existed as CET

10

3.3.2.2 of the existing contract, Raytheon's ignoring the requirement a violation of its contractor obligations to the United States and the plan to include such certification from the ATTLA in a future contract is a plan to double bill for the exact same capability, for which the United States had already agreed to pay in excess of $23 million.

38.  During the week of April 18, 2011, in a meeting with Systems Cross Product Team Lead Steven Palik and Chief Engineer Maurice Roe, Relator announced that Raytheon could not comply with the specifications in CET 3.3.2.2. Relator recommended requesting relief from the contracting officer, but his suggestion was ignored and, in the April 27, 2011 kickoff meeting shortly thereafter with the United States Army, Raytheon did not disclose its inability to comply with the terms of the contract for which it was paid by the United States Army.

39.  Raytheon's April 27, 2011 PowerPoint presentation to the United States entitled, "Hawkeye Customer Kick Off" specifies the length of the GCS to be 40 feet, and indicates the GCS would be "Air and Ground Transport Capable" as opposed to "certified for military air transport" as required by the contract.

40.  In an email exchange between Relator and then-Program Manager Kevin Sickles about the problem, Relator wrote on April 29, 2011, that Raytheon had a "contractual obligation for the GCS to be certified for military air transport" and characterized the contradiction between that requirement and the size requirement for the GCS as "nontrivial." Relator noted that it was unlikely the particular GCS they were building would ever be flown on a military transport aircraft, but nonetheless, reiterated that the contractual obligation that the GCS be certified to do so, existed. Relator's email requested clarification of the instructions as to the contradictory directives, specifically asking in conclusion, "Is our intent to follow or to request modification from our present contractual obligation regarding military air transport certification?"

11

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

41.     After some exchange with Sickles on the issue, Relator received an April 29, 2011 reply from Roe, stating the military air transport certification was not required for phase 1 of the project.  Instead, Roe directed the team to "move on with the order to assure the shelter gets here to support sil integration."  Roe's directive ensured the United States Army would be billed a second time for the same work because it indicated that the cost of certification for military air transport would be built into the not-yet-negotiated phase 2 of the project, rather than the already negotiated and, at least partially paid for, phase 1 of the project.

42.     Following Roe's email, Relator learned Don Crosby was replacing Kevin Sickles as Program Manager.  In a verbal discussion, Crosby told Relator to "completely remove air transportability certification and considerations" from the requirements and negotiations.  In other words, Raytheon had no intention of meeting CET 3.3.2.2's requirements, even though it had billed the United States in excess of $23 million for phase 1 of the contract, which included a commitment that the GCS would be "certified for military air transport."  Relator confirmed Crosby's directive in an April 30, 2011 reply to Mr. Roe's April 29 email.

43.     Because Raytheon could not meet the requirement of CET 3.3.2.2, it could not and did not deliver on the contract for which it was paid in excess of $23 million.

44.     Almost immediately after Relator stated Raytheon could not meet its contractual obligations to the United States Army in the meeting during the week of April 18, his relationship with Chief Engineer Roe deteriorated.  Specifically, Roe alternated between passive-aggressive and combative behavior toward Relator, began avoiding Relator and failed to communicate professionally with Relator.  When this pattern of conduct began to impact Relator as a hostile work environment, aggravating long-dormant symptoms of post-traumatic stress disorder, from which Relator suffers as a result of traumatic incidents from his childhood, Relator approached Program Manager Crosby about his concerns.

12

1  Crosby responded by stating his "head would explode" if he had to handle the

2  conflicts emerging between Relator and Mr. Roe.

3      45.    Close to midnight on May 25, 2011, Roe sent an email to Relator

4  which misquoted and unnecessarily attacked Relator. On May 26, 2011, Relator

5  forwarded the email to Program Manager Crosby, disclosing his disability and

6  requesting accommodation. Relator received no response.

7      46.    In or about May 2011, Relator noticed that much of his email

8  correspondence detailing his insistence that Raytheon was mishandling the

9  government contract and could be guilty of defrauding the government had been

10  deleted from his Raytheon email account. The deletion of such emails is against

11  legal requirements for government contracted companies, is likely against

12  Raytheon protocol and constitutes spoliation of evidence. Relator complained to

13  the IT manager, who did not acknowledge any emails had been deleted, and

14  therefore, offered no explanation for what Relator had most certainly observed.

15      47.    On June 1, 2011, Raytheon's Vice President, Roy Azevedo, spoke

16  glowingly of his confidence in the Hawkeye leadership team, which included

17  Relator.

18      48.    On or about June 2, 2011, less than a week after disclosing his

19  disability and less than 2 months after notifying Raytheon it could not comply with

20  its contractual obligations to the Army on the Hawkeye program, Relator was

21  removed from the Hawkeye program. The only explanation provided at the time

22  by John Constantino (who had originally recruited and hired Relator) was that

23  Relator was removed by Program Manager Crosby because he was "too thin

24  skinned," an obvious reference to Relator's objections to the contractual

25  irregularities, and emotional manifestations of the PTSD, triggered by the hostile

26  work environment. In a subsequent conversation with David Kanagawa from

27  Raytheon's Human Resources Department, Relator was told he was removed from

28  the Hawkeye program because he was "not getting along with" Program Manager

13

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   Crosby.  The GCS IPTL position was left vacant, presumably because anyone

2   filling that role would necessarily have had the same objections to the contract that

3   Relator had expressed.

4       49.    From June 3, 2011 until September 19, 2011, Relator was on a doctor-

5   prescribed disability leave of absence.  The notes Relator submitted to Raytheon

6   identified Relator's disability as post-traumatic stress disorder and stated he was

7   unable to work during this time frame.  Specifically, by letter dated July 15, 2011,

8   Relator's therapist, Artemis Tegan, M.A., MFT, notified Raytheon that Relator

9   was in treatment for Complex Post Traumatic Stress Disorder, with symptoms

10  including insomnia, panic attacks, hypervigilance and dissociation.  Ms. Tegan's

11  letter included recommendations for accommodations which Raytheon could

12  provide in order to avoid triggering Relator's symptoms, and additional

13  accommodations which would assist Relator in successfully performing his job

14  duties.

15      50.    By letter dated July 21, 2011, Relator's physician, Isabel Puri, M.D.

16  also advised Raytheon that Relator suffered from Complex Post Traumatic Stress

17  Disorder, which included symptoms of insomnia, panic attacks, hypervigilance and

18  dissociation.  Dr. Puri's letter suggested reasonable accommodations at work to

19  avoid triggering dissociative episodes, including that communications be both

20  verbal and written, that Relator be allowed to record conversations, that Relator be

21  given flexibility during meetings to excuse himself, and a general effort to avoid

22  surprises to Relator about workplace issues which might result in severe anxiety or

23  dissociation.  Dr. Puri's letter concluded by advising Raytheon that its reluctance

24  to negotiate reasonable accommodations with Relator had been exacerbating the

25  symptoms of his PTSD.

26      51.    On or about August 10, 2011, Relator submitted a written complaint

27  to his Congresswoman, Janice Hahn, disclosing Raytheon's gross mismanagement

28  of the Army contract with the expectation that he would be protected from

14

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT

{Client Files/PEVL01/001/00061551.DOC}

1   retaliation. Relator's letter to Congresswoman Hahn resulted in an investigation

2   by the U.S. Department of Defense ("DOD") Inspector General.

3      52.     Shortly after the DOD investigation began, Program Manager Crosby

4   abruptly left his job with Raytheon, where he had worked for 32 years, even

5   though he was well under retirement age. Relator suspects Crosby's employment

6   was terminated because of the fraud relating to the Hawkeye program contract.

7      53.     On September 14, 2011, Relator submitted an ADA Complaint to

8   Raytheon pursuant to the requirements of Raytheon's Alternative Dispute

9   Resolution process.

10     54.     On October 17, 2011, Relator sent an email to Tina Romain and

11   David Kanagawa in Raytheon's Human Resources Department, subject line,

12   "ADA accommodation progress." In his email, Relator reiterated the history of his

13   requests for reasonable accommodations of his disability, dating back to July 15,

14   2011. Relator's email also provided information about his disability, post-

15   traumatic stress disorder, and objective support for his requested accommodations.

16   Further, Relator's email notified Raytheon that his "recent interim performance

17   evaluation included criticisms of [his] performance which could be improved by

18   the implementation of the accommodations" he was seeking. In other words, had

19   Raytheon timely provided reasonable accommodations, Relator's performance

20   would not have been lacking. Because Relator had previously been told it takes

21   Raytheon 30 to 90 days to respond to ADA accommodation requests, and that time

22   frame had been exceeded, Relator requested "immediate attention" to his requests.

23     55.     On or about November 9, 2011, Relator complained to the Office of

24   Federal Contract Compliance Programs ("OFCCP") that he was being

25   discriminated against based on his disabilities. By letter dated November 17, 2011,

26   Relator received confirmation of receipt of his complaint from the OFCCP.

27     56.     Also, by letter dated November 17, 2011, Relator received

28   confirmation from Congresswoman Hahn that she had received a response from

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1  the DOD Inspector General's office, stating it would be contacting Relator directly,

2  in order to obtain the details of his complaint that Raytheon had committed fraud

3  and overcharging.

4    57.    On November 27, 2011, Relator provided the OFCCP with a detailed

5  recitation of the facts supporting his claim of disability discrimination.

6    58.    On December 1, 2011, Relator received an email from the Department

7  of Defense Hotline, which requested additional details relating to the complaint he

8  had submitted to Congresswoman Hahn's office.  In a reply email the same day,

9  Relator provided the requested details, including the contract number and the

10 provision in the contract with which Raytheon was unable to comply.

11   59.    By letter dated December 1, 2011, Relator received confirmation from

12 the OFCCP that it was investigating his complaints of harassment, reassignment

13 and failure to provide reasonable accommodations of his disabilities.

14   60.    After being removed from the Hawkeye program, Relator's internal

15 assignment status was changed to "awaiting assignment" and Relator spent weeks

16 in complete isolation with literally no work to do.  Although Relator was

17 eventually assigned various small projects to complete, he was never reassigned to

18 an actual project.  Also, after being removed from the Hawkeye program, Relator's

19 Raytheon email was repeatedly hacked, with large blocks of emails being deleted

20 from his account, as well as portions of emails removed while the remainder of the

21 email remained intact.

22   61.    On or about February 12, 2012, Relator received his Performance &

23 Development Summary (performance evaluation) for the 2011 work year.

24 Relator's 2011 performance was rated as "Meets Requirements."  Interestingly, the

25 February 2012 evaluation acknowledges that Relator "[d]iscovered and brought to

26 management's attention contracting issue regarding GCS certification requirement

27 in Hawkeye's Contractual Engineering Task" and lists as one of Relator's

28 strengths: "Attention to detail shown in alerting management to Hawkeye's

16

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   contracting issue regarding the inability to fulfill CET describing GCS

2   certification." Nevertheless, the evaluation also criticized Relator, noting "[f]rom

3   the program point of view, there were issues that Ed continued to bring up that had

4   already been addressed," clearly referring to Relator's repeated complaints that

5   Raytheon could not comply with CET 3.3.2.2 of the contract with the United States

6   Army. The evaluation continues on to characterize this conduct by Relator as "a

7   distraction to program personnel" and states Relator "impeded program

8   performance and execution."

9       62.   By letter dated March 28, 2012, Relator was notified of the results of

10  the OFCCP's investigation into his complaint of disability discrimination. The

11  OFCCP concluded that, although the applicable federal anti-discrimination laws

12  applied to Raytheon and protected Relator, there was "insufficient evidence to

13  conclude that [Relator] was removed from [the Hawkeye program] assignment

14  because of his disability." The OFCCP found Relator's reassignment "was due to

15  reasons unrelated to his disability[; s]pecifically, his disruptive behavior in

16  meetings and unwillingness to work as a team member resulted in a business

17  decision by the program manager [Crosby] to re-assign [Relator]." By making this

18  finding, the OFCCP unwittingly bolstered Relator's suspicion that the

19  reassignment was motivated by his whistleblower complaints that Raytheon was

20  engaged in fraud and overcharging the federal government.

21      63.   In 2012, Relator was awarded a "Shining Star" by his supervisor

22  relating to developing an engineering notebook for the Multi-Platform Radar

23  Technology Insertion Program Field Service Representative project.

24      64.   On or about January 30, 2013, Relator received his Performance &

25  Development Summary (performance evaluation) for the 2012 work year.

26  Relator's 2012 performance was rated as "Meets Expectations."

27      65.   On January 13 and 14, 2014, Relator corresponded by email with the

28  DOD Inspector General, accessing his personal gmail account from his Raytheon

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1  work computer in order to schedule the interview relating to his whistleblower
2  complaint.

3      66.    On January 29, 2014, Relator was finally interviewed by the DOD
4  Inspector General criminal investigators regarding his 2011 complaint.

5      67.    Less than one week later, on February 5, 2014, Relator was notified
6  he was being laid off by Raytheon, because his "position in the company will be
7  eliminated effective February 19, 2014." The paperwork provided to Relator
8  regarding the layoff notified Relator that he and one other employee were being
9  laid off as part of a "reduction-in-force." Relator was offered a financial separation
10  package in exchange for signing a release of all claims. Relator rejected the
11  package and did not sign the release. The paperwork accompanying the layoff
12  notification indicates that 2 of 13 employees in Relator's "decisional unit" were
13  being laid off.

14      68.    Almost immediately, Relator contacted the DOD Inspector General
15  and asserted that his layoff was retaliation for his whistleblower complaint. By
16  letter dated March 24, 2014, Relator was notified the DOD was dismissing his
17  retaliation complaint, even though, by all accounts, Relator's underlying
18  whistleblower complaint was still under investigation by the DOD Inspector
19  General's office at that time.

20      69.    Relator again made a "hotline" complaint and on April 22, 2014,
21  Relator received an email from the DOD Office of Inspector General "Defense
22  Hotline Team" confirming the Whistleblower Reprisal Investigations Directorate
23  "did not find a sufficient basis to initiate an inquiry" into Relator's retaliation
24  complaint. However, the Defense Hotline Team stated it had initiated a case and
25  referred Relator's concerns to the Department of the Army Inspector General.

26      70.    Finally, although as promised to Relator during the hiring process,
27  Raytheon had a duty to properly maintain and update Relator's security clearance
28  and should have initiated a 5 year update in 2012, Raytheon failed in this duty.

18

1   Raytheon's failure resulted first in Relator's security clearance being dropped from

2   "Top Secret" to "Secret," and then in the expiration of Relator's "Secret" security

3   clearance altogether, thereby depriving Relator of this valuable asset when he

4   embarked upon a search for subsequent employment.

5        71.    At the time of his termination, Relator was earning approximately

6   $128,000 per year, plus benefits, and an annual bonus equating approximately 3%

7   of his annual salary.

## FIRST CAUSE OF ACTION

**False Claims Act – Presenting or Causing the Presentation of False or**

**Fraudulent Claims to the United States, 31 U.S.C. §3729(a)(1)(A)**

(Against All Defendants)

12       72.    Relator re-alleges and incorporates herein by reference paragraphs 1

13  through 71, inclusive, as though fully set forth herein.

14       73.    This is a claim for treble damages and penalties under the False

15  Claims Act, 31 U.S.C. §§3729, *et seq.*, as amended.

16       74.    Through the acts described herein, including by submitting claims to

17  the United States for payment on contract #H94003-04-D-0006, for work it could

18  not perform, Defendants have knowingly presented or caused to be presented, false

19  or fraudulent claims to officers, employees or agents of the United States, within

20  the meaning of 31 U.S.C. section 3729(a)(1)(A).

21       75.    As a result of Defendants' acts, the United States has been damaged,

22  and continues to be damaged, in a substantial amount to be determined at trial.

23       76.    Additionally, the United States is entitled to the maximum penalty of

24  $11,000 for each and every false and fraudulent claim presented by Defendants

25  arising from their unlawful conduct as described herein.

26  ///

27  ///

28  ///

19

## SECOND CAUSE OF ACTION

**False Claims Act – Making or Using or Causing Another to Make or Use a False Record or Statement to Get a False or Fraudulent Claim Paid or Approved, 31 U.S.C. §3729(a)(1)(B)**

(Against All Defendants)

77.   Relator re-alleges and incorporates herein by reference paragraphs 1 through 71, inclusive, as though fully set forth herein.

78.   This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729, *et seq.*, as amended.

79.   Through the acts described herein, including making the false statement that it could provide a GCS "certified for military air transport" as part of contract #H94003-04-D-0006, in support of its claim to be paid in excess of $23 million, Defendants have knowingly made, used, or caused to be made or used, false or fraudulent records and statements, and omitted material facts, to get false and fraudulent claims paid or approved, within the meaning of 31 U.S.C. section 3729(a)(1)(B).

80.   As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

81.   Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false and fraudulent record or statement made or used, or caused to be made or used by Defendants arising from their unlawful conduct as described herein.

## THIRD CAUSE OF ACTION

**False Claims Act – Conspiracy, 31 U.S.C. §3729(a)(1)(C)**

(Against All Defendants)

82.   Relator re-alleges and incorporates herein by reference paragraphs 1 through 71, inclusive, as though fully set forth herein.

83.   This is a claim for treble damages and penalties under the False

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1  Claims Act, 31 U.S.C. §§3729, *et seq.*, as amended.

2       84.    Through the acts described herein, Defendants and DOE Defendants,

3  acting together in concert as each other's contractors, agents, partners, and/or

4  representatives in submitting false claims, records, and statements therefor without

5  disclosing material facts or by providing information of falsity, were acting within

6  the course, scope, and authority of such contract, agency, partnership and/or

7  representation for the conduct described herein. Defendants conspired to defraud

8  the United States by getting false or fraudulent claims allowed or paid, within the

9  meaning of 31 U.S.C. section 3729(a)(1)(C), including by making representations

10  they could provide a GCS "certified for military air transport" as part of contract

11  #H94003-04-D-0006, in support of its claim to be paid in excess of $23 million.

12       85.    As a result of Defendants' acts, the United States has been damaged,

13  and continues to be damaged, in a substantial amount to be determined at trial.

14       86.    Additionally, the United States is entitled to the maximum penalty of

15  $11,000 for each and every false and fraudulent claim allowed or paid through

16  Defendants' conspiracy to defraud the United States.

## FOURTH CAUSE OF ACTION

### False Claims Act – Unlawful Retention of Overpayments and Failure to
### Disclose Overpayments, 31 U.S.C. §3729(a)(1)(G)

(Against All Defendants)

21       87.    Relator re-alleges and incorporates herein by reference paragraphs 1

22  through 71, inclusive, as though fully set forth herein.

23       88.    This is a claim for treble damages and penalties under the False

24  Claims Act, 31 U.S.C. §§3729, *et seq.*, as amended.

25       89.    In 2010, the FCA was amended, imposing additional requirements for

26  Defendants to return funds they have knowingly and falsely retained.

27       90.    Relator is informed and believes and based thereon alleges that

28  Raytheon retained the entire amount paid to it by the United States for contract

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1  #H94003-04-D-0006, despite the fact that it could not provide a GCS "certified for

2  military air transport".

3    91.    Defendants were aware that the conduct described herein resulted in

4  the submission of false claims for payment to which Defendants were not entitled.

5  Defendants have knowingly and wrongfully retained such overpayments. Since

6  enactment of amendments to 31 U.S.C. section 3729(a)(1)(C), each day that

7  Defendants have retained such an overpayment is a separate violation of the FCA.

8    92.    Additionally, Federal Acquisition Regulation ("FAR") 52.203-13

9  requires Defendants to timely disclose, in writing, to the agency Office of the

10  Inspector General, with a copy to the Contracting Officer whenever, in connection

11  with the award, performance, or closeout of a contract or any subcontract

12  thereunder, the Contractor has credible evidence that a principal, employee, agent

13  or subcontractor of the Contractor has committed a violation of the False Claims

14  Act.

15    93.    As a result of Defendants' acts, the United States has been damaged,

16  and continues to be damaged, in a substantial amount to be determined at trial.

17    94.    Additionally, the United States is entitled to the maximum penalty of

18  $11,000 for each and every false record or statement knowingly made, used, or

19  caused to be made or used material to an obligation to transmit money or property

20  to the government.

## FIFTH CAUSE OF ACTION

### False Claims Act – Retaliation, 31 U.S.C. §3730(h)

(Against Raytheon)

24    95.    Relator re-alleges and incorporates herein by reference paragraphs 1

25  through 71, inclusive, as though fully set forth herein.

26    96.    Through reporting, investigating, and attempting to stop Defendants'

27  fraudulent conduct, Relator was threatened, discriminated against, demoted and

28  ultimately terminated by Defendants because of lawful acts he performed in

1   furtherance of an action under 31 U.S.C. §3729.

2       97.    Federal law entitles employees to "all relief necessary to make that

3   employee . . . whole, if that employee . . . is discharged, demoted, suspended,

4   threatened, harassed, or in any other manner discriminated against in the terms and

5   conditions of employment because of lawful acts done by the employee . . . in

6   furtherance of an action under" the federal False Claims Act. (31 U.S.C.

7   §3730(h)(1)).

8       98.    The "relief" to which Relator is entitled under this section includes

9   "reinstatement with the same seniority status that employee . . . would have had but

10  for the discrimination, 2 times the amount of back pay, interest on the back pay,

11  and compensation for any special damages sustained as a result of the

12  discrimination, including litigation costs and reasonable attorneys' fees." (31

13  U.S.C. §3730(h)(2)).

## SIXTH CAUSE OF ACTION

### Unlawful Reprisal in Violation of 10 U.S.C. §2409

(Against Raytheon)

17      99.    Relator re-alleges and incorporates herein by reference paragraphs 1

18  through 71, inclusive, as though fully set forth herein.

19      100.   Federal law prohibits employers who contract with the government

20  from discharging, demoting or otherwise discriminating against an employee "as a

21  reprisal for disclosing to a Member of Congress, . . . an Inspector General, . . . [or]

22  a Department of Defense employee . . . information that the employee reasonably

23  believes is evidence of gross mismanagement of a Department of Defense contract

24  or grant, a gross waste of Department of Defense funds, . . . or a violation of law

25  related to a Department of Defense contract (including the competition for or

26  negotiation of a contract . . .." (10 U.S.C. §2409(a)).

27      101.   Relator's complaints to Congresswoman Hahn's office and the

28  Department of Defense Inspector General fall squarely within the scope of this

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   federal law.

2       102.   Raytheon's retaliation against Relator by demoting him, removing

3   him from the Hawkeye program, and ultimately terminating his employment on

4   pretextual grounds, for his role in complaining about and exposing the fraud

5   violates 10 U.S.C. §2409.

6       103.   An employee who prevails on a claim brought pursuant to 10 U.S.C.

7   section 2409 is entitled to reinstatement to his position with compensation,

8   including back pay, employment benefits and other terms and conditions of his

9   employment, plus all costs and expenses, including attorneys' fees incurred by the

10   employee in connection with bringing his complaint.

11   ### SEVENTH CAUSE OF ACTION

12   ### Wrongful Termination in Violation of Public Policy

13   (Against Raytheon)

14       104.   Relator re-alleges and incorporates herein by reference paragraphs 1

15   through 71, inclusive, as though fully set forth herein.

16       105.   It is the law and public policy of the State of California that no

17   employer may terminate an employee because that employee reported suspicions

18   of illegal conduct to his employer. (*Collier v. Superior Court* (1991) 228

19   Cal.App.3d 1117, 1127).

20       106.   It is the law and public policy of the State of California that no

21   employer may "retaliate against an employee for disclosing information, or

22   because the employer believes that the employee disclosed or may disclose

23   information, to a government or law enforcement agency, to a person with

24   authority over the employee or another employee who has the authority to

25   investigate, discover, or correct the violation or noncompliance, or for providing

26   information to, or testifying before, any public body conducting an investigation,

27   hearing, or inquiry, if the employee has reasonable cause to believe that the

28   information discloses a violation of state or federal statute, or a violation of or

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   noncompliance with a local, state, or federal rule or regulation, regardless of

2   whether disclosing the information is part of the employee's job duties."

3   (California Labor Code §1102.5(b)).

4       107.  It is the law and public policy of the State of California that no

5   employer may "retaliate against an employee for refusing to participate in an

6   activity that would result in a violation of state or federal statute, or a violation of

7   or noncompliance with a local, state, or federal rule or regulation." (California

8   Labor Code §1102.5(c)).

9       108.  It is the law and public policy of the State of California that no

10   employer shall discharge, formally discipline, or otherwise discriminate against, an

11   employee who discloses the information about an employer's working conditions.

12   (California Labor Code §232.5(c)).

13       109.  Relator is informed and believes and based thereon alleges that his

14   reports to Defendants of false and fraudulent nature of the contract for Raytheon's

15   Hawkeye Program were factors in the termination of his employment.

16       110.  Defendants were motivated to terminate Relator's employment on

17   grounds that violate the aforementioned California public policies by terminating

18   Relator's employment because of his protected conduct.

19       111.  Defendants violated California public policies and laws as set forth in

20   the California Labor Code, and/or common law by terminating Relator because of

21   his protected conduct as set forth above.

22       112.  As a result of Defendants' aforesaid acts and omissions, Relator has

23   been directly and legally caused to suffer actual damages including, but not limited

24   to, substantial losses in earnings, other employment benefits, and future earning

25   capacity, and other pecuniary loss not presently ascertained, in an amount

26   according to proof at the time of trial.

27       113.  As a further direct and legal result of Defendants' acts and conduct,

28   Relator has been caused to suffer, did suffer and continues to suffer severe

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   emotional and mental distress, anguish, humiliation, embarrassment, fright, shock,

2   mental and physical pain, discomfort and anxiety.  Relator does not know at this

3   time the exact, nature, extent, duration or permanence of said injuries, but is

4   informed and believes and based thereon alleges that some if not all of the injuries

5   are reasonably certain to be permanent in character.

6      114.   Relator has been generally damaged in an amount within the

7   jurisdictional limits of this Court.

8      115.   Relator is informed and believes and based thereon alleges that by

9   engaging in the aforementioned acts and/or in authorizing and/or ratifying such

10  acts, Defendants engaged in willful, malicious, intentional, oppressive and

11  despicable conduct, and acted with willful and conscious disregard of Relator's

12  rights, welfare and safety, thereby justifying the award of punitive and exemplary

13  damages in an amount to be determined at trial.

14     116.   As a result of Defendants' unlawful conduct alleged herein, Relator

15  has incurred and continues to incur legal expenses which he can, and seeks to

16  recover, in an amount according to proof at the time of trial.

17              **EIGHTH CAUSE OF ACTION**

18  **Unlawful Retaliation in Violation of California Labor Code §1102.5**

19              (Against Raytheon)

20     117.   Relator re-alleges and incorporates herein by reference paragraphs 1

21  through 71, inclusive, as though fully set forth herein.

22     118.   California Labor Code section 1102.5(b) prohibits employers from

23  retaliating against "an employee for disclosing information, or because the

24  employer believes that the employee disclosed or may disclose information, to a

25  government or law enforcement agency, to a person with authority over the

26  employee or another employee who has the authority to investigate, discover, or

27  correct the violation or noncompliance, or for providing information to, or

28  testifying before, any public body conducting an investigation, hearing, or inquiry,

if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

119. California Labor Code section 1102.5(c) prohibits employers from retaliating against "an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

120. During his employment, Relator engaged in the following legally protected activity:

    a. disclosed Defendants' unlawful conduct to Defendants;

    b. disclosed Defendants' unlawful conduct to the United States Department of Defense;

    c. disclosed Defendants' unlawful conduct to a Member of Congress; and

    d. disclosed Defendants' unlawful conduct to an Inspector General.

121. Defendants were motivated to retaliate against Relator on grounds that violate the California Labor Code sections 1102.5, *et seq.*, as set forth above.

122. As a result of Defendants' aforesaid acts and omissions, Relator has been directly and legally caused to suffer actual damages including, but not limited to, substantial losses in earnings, other employment benefits, and future earning capacity, and other pecuniary loss not presently ascertained, in an amount according to proof at the time of trial.

123. As a further direct and legal result of Defendants' acts and conduct, Relator has been caused to suffer, did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, mental and physical pain, discomfort and anxiety. Relator does not know at this time the exact, nature, extent, duration or permanence of said injuries, but is

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1   informed and believes and based thereon alleges that some if not all of the injuries

2   are reasonably certain to be permanent in character.

3       124. Relator has been generally damaged in an amount within the

4   jurisdictional limits of this Court.

5       125. Relator is informed and believes and based thereon alleges that by

6   engaging in the aforementioned acts and/or in authorizing and/or ratifying such

7   acts, Defendants engaged in willful, malicious, intentional, oppressive and

8   despicable conduct, and acted with willful and conscious disregard of Relator's

9   rights, welfare and safety, thereby justifying the award of punitive and exemplary

10  damages in an amount to be determined at trial.

11      126. As a result of Defendants' unlawful conduct alleged herein, Relator

12  has incurred and continues to incur legal expenses which he can, and seeks to

13  recover, in an amount according to proof at the time of trial.

14      127. In addition to other penalties, Defendants are liable for a civil penalty

15  not exceeding $10,000 for each violation of California Labor Code section 1102.5,

16  as set forth in California Labor Code section 1102.5(f).

17  **NINTH CAUSE OF ACTION**

18  **Intentional Infliction of Emotional Distress**

19  (Against Raytheon)

20      128. Relator re-alleges and incorporates herein by reference paragraphs 1

21  through 71, inclusive, as though fully set forth herein.

22      129. Defendants' conduct, as set forth above, was so extreme and

23  outrageous that it exceeded the boundaries of a decent society and lies outside of

24  the compensation bargain. Said conduct was intended to cause severe and

25  emotional distress, or was done in conscious disregard of the probability of causing

26  severe emotional distress.

27      130. As a further direct and legal result of Defendants' acts and conduct,

28  Relator has been caused to and did suffer and continues to suffer severe emotional

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1  and mental distress, anguish, humiliation, embarrassment, fright, mental and

2  physical pain, discomfort and anxiety, all to his damage in an amount according to

3  proof at the time of trial. Relator does not know at this time the exact duration or

4  permanence of said injuries, but is informed and believes, and thereon alleges, that

5  some if not all of the injuries are reasonably certain to be permanent in character.

6    131. In doing the acts alleged herein, Defendants acted with oppression,

7  fraud, malice, deceit and in willful and conscious disregard of Relator's rights,

8  welfare and safety, and Relator is therefore entitled to punitive damages in an

9  amount according to proof at the time of trial thereby justifying the award of

10  punitive and exemplary damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### Unfair Business Practices

### (Against Raytheon)

14    132. Relator re-alleges and incorporates herein by reference paragraphs 1

15  through 71, 73 through 76, 78 through 81, 83 through 86, 88 through 94, 96

16  through 98, 100 through 103, 105 through 116, 118 through 127 and 129 through

17  131, inclusive, as though fully set forth herein.

18    133. California Business & Professions Code sections 17200, *et seq.* define

19  unfair competition to include any "unfair," "unlawful," or "deceptive" business

20  practice. California Business & Professions Code sections 17200, *et seq.* provide

21  for injunctive and restitutionary relief for violations.

22    134. Defendants engaged in unfair business practices by committing the

23  following acts, among others:

24     a. terminating Relator based on his protected conduct, including but not

25      limited to, reporting suspicions of illegal conduct to Defendants, in

26      violation of California Labor Code sections 232.5 and 1102.5;

27     b. retaliating against Relator for reporting suspected unlawful conduct to

28      Defendants in violation of California Labor Code section 1102.5;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

c. retaliating against Relator in violation of 31 U.S.C. section 3730(h); and

d. subjecting Relator to unlawful reprisal in violation of 10 U.S.C. section 2409.

135.  As a direct and proximate result of Defendants' conduct as alleged herein, Relator has been damaged as a result of Defendants' violations of the statutes set forth above.

136.  Under California Business & Professions Code sections 17200 and 17203, Relator is entitled to restitution of all wages Defendants agreed to pay and which were due to Relator, wrongfully withheld by Defendants, together with interest thereon.

137.  Under California Business & Professions Code section 17203, Relator also seeks an order enjoining Defendants from continuing its aforesaid unlawful practices.  Injunctive relief is appropriate to avoid a multiplicity of suits for continuing violations of California Business & Professions Code sections 17200, *et seq.*

138.  Defendants' conduct, as alleged above, constitutes unlawful, unfair and fraudulent activity prohibited by California Business & Professions Code sections 17200, *et seq.*

139.  As a result of their improper acts, Defendants have reaped and continue to reap unfair benefits and illegal profits at Relator's expense. Defendants should be made to restore to Relator these gains pursuant to California Business & Professions Code section 17203.

140.  Defendants should also be permanent enjoined from violating the California Labor Code.

141.  Defendants should also be subjected to penalties pursuant to California Business & Professions Code section 17202.

///

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States of America, through Relator respectfully prays for judgment against Defendants, and each of them, as follows:

1.    That Defendants be ordered to cease and desist from defrauding the United States in violation of 31 U.S.C. §§3729, *et seq.*;

2.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus of civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. section 3729;

3.    That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. section 3730(d);

4.    That, as a result of Defendants' unlawful employment actions, Relator receive all relief necessary to make him whole pursuant to federal and state causes of action for wrongful employment conduct, retaliation and termination;

5.    That, as a result of Defendants' violations of public policy and violation of California Labor Code section 1102.5, Relator receive all relief necessary to make him whole pursuant to federal and state law;

6.    That Relator is immediately reinstated with the same seniority status he would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. (31 U.S.C. §3730(h)(2));

7.    For special damages, including past and future lost wages and benefits;

8.    For general damages, including emotional distress, physical and mental pain and suffering;

9.    For exemplary or punitive damages in an amount sufficient to punish Defendants and to deter similar future misconduct;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

1    10.    For injunctive and other equitable relief, including but not limited to

2  reinstatement with back pay, as permitted by law;

3    11.    For a permanent injunction prohibiting Defendants from violating

4  Labor Code sections 1102, *et seq.*;

5    12.    For disgorgement through restitution of all ill-gotten and/or ill-gained

6  profits, including unpaid wages, premiums and/or penalties, resulting from

7  Defendants' unfair business practices;

8    13.    For costs of suit incurred herein;

9    14.    For attorneys' fees on causes of action where fees are available by

10 law;

11    15.    Prejudgment and post-judgment interest as available by law; and

12    16.    For such other and further relief as this Court may deem just and

13 proper.

14

15 DATED: February *17*, 2016          APPLETON LAW GROUP, APC

16

17                       By:    _____

18                              HEATHER APPLETON
                               Attorneys for Relator
19                              ALFRED EDWIN PEVLER

20              **DEMAND FOR TRIAL BY JURY**

21    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby

22 demands a trial by jury.

23

24 DATED: February *17*, 2016          APPLETON LAW GROUP, APC

25

26                       By:    _____

27                              HEATHER APPLETON
                               Attorneys for Relator
28                              ALFRED EDWIN PEVLER

32

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
{Client Files/PEVL01/001/00061551.DOC}

JS 44 (Rev. 12/12)

**CIVIL COVER SHEET**

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| UNITED STATES ex rel PEVLER, ALFRED EDWIN | RAYTHEON COMPANY |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
SEE ATTACHMENT

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 USC §3730(b)(2)
Brief description of cause:
False Claims Act case on behalf of United States; Retaliation and Wrongful Termination on behalf of Relator

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER

CV16-01144

DATE
02/17/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## ATTACHMENT TO CIVIL COVER SHEET

Attorneys for Plaintiff:

Heather Appleton, Esq. (SBN 162283)
**happleton@appletonlg.com**
APPLETON LAW GROUP, APC
2101 Rosecrans Avenue, Suite 4240
El Segundo, California 90245
Telephone: (310) 474-7022
Facsimile: (310) 474-7023

Scott McVarish, Esq. (SBN 198095)
**scott@strongadvocates.com**
Law Office of Scott McVarish
6601 Center Drive West, Suite 500
Los Angeles, California 90045
Telephone: (800) 792-9889
Facsimile: (800) 628-5605